UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD HAYES and
CASSANDRA HAYES,

        Plaintiffs,

v.

LIBERTY MUTUAL GROUP INC.

        Defendant.

Case No. 11-15520
Hon. Stephen J. Murphy, III
Mag. Judge Laurie J. Michelson

_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
MOTION TO COMPEL APPRAISAL [DKT. 12]**

This is an insurance coverage dispute. Plaintiff homeowners Reginald and Cassandra Hayes allege that Defendant Liberty Mutual was (and is) obligated to pay for their temporary living arrangements while their asbestos-contaminated home is being repaired. (Dkt. 1, Ex. A.) Defendant disputes that Plaintiffs are entitled to receive these benefits beyond the 12 consecutive months following the date of loss and also filed a Counterclaim seeking a declaration that it is entitled to rescind the Plaintiffs' insurance policy on the basis of material misrepresentations made in the Policy Application. (Dkt. 6.)

On January 20, 2012, Plaintiffs filed the present Motion to Compel an Appraisal as to the amount of loss/damage to their home. (Dkt. 12.) The Motion was referred to this Court for a hearing and determination pursuant to 28 U.S.C. §636(b)(1)(A). (Dkt. 14.) Defendant filed its Response on February 8, 2012 (Dkt. 23), and the Court heard oral argument on February 17, 2012. For the reasons set forth below and on the record during the hearing, the Motion is **DENIED WITHOUT PREJUDICE** pending a ruling on the existence and scope of the insurance coverage.

**I.     BACKGROUND**

The following facts are taken from the parties' briefs and pleadings and do not represent findings by the Court.

Plaintiffs Reginald and Cassandra Hayes ("Plaintiffs") own an historic home in Flint, Michigan that is covered by a homeowner's insurance policy issued by Defendant Liberty Mutual Group, Inc. ("Defendant" or "Liberty Mutual"). (Dkt. 1, Ex. A, Compl. at ¶ 5.) On November 23, 2010, the home was damaged by water leaking from pipes. (Dkt. 12, Pl. Mot. Compel, Pg ID 267.) Approximately one month later, Plaintiffs contacted Liberty Mutual and the assigned insurance adjustor advised the Plaintiffs to have a contractor review the damage. (Compl., ¶¶ 10-11.) Plaintiffs ultimately hired a plumbing contractor (Jesus Construction) and while working to repair the leaking pipes – including extensive removal of tile covering walls and floors in several of the bathrooms as well as other demolition work – the contractor discovered asbestos wrapping or insulation around the pipes. (Mot. Compel at Pg ID 267; Dkt. 1, Ex. D, Bailey Aff., ¶ 8.) In late January or early February 2011, Plaintiffs and their young children moved out of the home and into a hotel due to the asbestos contamination. (*Id.*; Compl., ¶ 15). Subsequently, in July 2011, the family leased a home in Bloomfield Hills, Michigan. (Compl., ¶ 27.)

Pursuant to the terms of the policy, Liberty Mutual began paying for the Hayes' temporary living arrangements – referred to as Additional Living Expenses ("ALE"). (Pl. Mot. at Pg ID 268.) More specifically, the Policy provides as follows:

> COVERAGE D – Loss of Use
>
> The limit of liability for Coverage D is the total limit for all the coverages that follow.
>
>> 1. If a loss covered under this Section makes that part

>  of the 'residence premises' where you reside not fit to live in, we cover, at your choice, either of the following . . . .
>
>> a. Additional Living Expenses, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or
>>
>> b. Fair Rental Value, meaning the fair rental value of that part of the 'residence premises' where you reside less expenses that do not continue while the premises is not fit to live in.
>
> Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.
>
> * * *
>
> The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

The Policy also contains the following "Homeprotector Plus Endorsement":

> INCREASED LIMIT – COVERAGE D
>
> We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, SUBJECT TO the periods of time under paragraphs 1, 2, and 3 Of Coverage D – Loss of Use.

*Id.* Liberty Mutual is paying Plaintiffs $8,378.76 per month, comprised of $7,500 in lease payments, $578.76 for furniture rental and $300.00 to Liberty Mutual's third-party ALE service provider, ALE Solutions. (Bailey Aff., ¶ 26.)

As set forth in the Affidavit of Douglas M. Bailey, the Liberty Mutual claims adjuster assigned to Plaintiffs' water damage and related property loss claim ("Hayes Claim"), there are three

3

components of the disputed claim between Liberty Mutual and Plaintiffs: (1) the cost of tile replacement in the second floor bathrooms: Plaintiffs submitted an estimate from Pewabic Pottery for handmade tile replacement in the amount of $128,000 while Liberty Mutual obtained a $53,000 estimate from Virginia Tile for suitable replacement tile; (2) the cost of asbestos cleanup: Liberty Mutual has paid Plaintiffs $11,000 toward asbestos contamination cleanup based upon an estimate from its contractor BDS Environmental, but Plaintiffs' estimate (from its hired Public Adjustor) for the remediation is between $50,000 to $75,000; and (3) Liberty Mutual's responsibility to continue paying for Additional Living Expenses (under Coverage D – Loss of Use and Increased Limit – Coverage D) beyond 12 months following the November 23, 2010 date of loss. (Bailey Aff., ¶¶ 14-15, 22, 23).

On October 19, 2011, Liberty Mutual sent Plaintiffs a letter advising that it would not pay for ALE after November 23, 2011, the one year anniversary of the date of loss for the Hayes Claim. (*Id*., ¶24.) Plaintiffs then filed this proposed class action lawsuit in Genesee County Circuit Court on November 18, 2011 alleging that "Liberty Mutual's refusal to continue to pay Mr. Hayes' additional living expenses after November 23, 2011 constitutes an anticipatory breach of the insurance policy." (Compl., ¶ 31 and Count I.) The Complaint also includes a count for Declaratory Relief asking the court to declare that the policy language quoted above requires Liberty Mutual to continue to pay for additional living expenses as long as the Plaintiffs' home is uninhabitable.

On that same day, Plaintiffs obtained a TRO ordering Liberty Mutual to continue to pay Plaintiffs' ALE. (Dkt. 1, Ex. A.) Defendant then removed the case to this Court on December 16, 2011 and filed an Answer and Counterclaim on December 23, 2011. (Dkt. 6.) Liberty Mutual disputes that it is required to pay ALE beyond 12 months following the date of loss. Liberty Mutual

4

also seeks a declaration from the court that it is permitted to rescind the Liberty Policy on the basis of material misrepresentations made in the Liberty Policy Application. (*Id*.) Defendant alleges that Mr. Hayes appears to have been conducting multiple businesses at the Flint residence but answered "No" to Question four on the Application that asks: "Is there any business conducted on the premises?" (Dkt. 6, ¶¶ 11-18.) If such misrepresentation served as an inducement for Defendant to issue the Liberty Policy or to issue the Policy without charging a higher premium, then, according to Defendant, there is a basis to rescind. (Resp. Br., Pg ID 416, n.3.)[1]

On January 9, 2012, Plaintiffs' Public Adjustor sent a letter to Defendant's adjustor (Mr. Bailey) stating that "Mr. Hayes demands an appraisal of all known loss/damage. The appraisal is to determine the scope and amount of the known loss/damage, including but not limited to the costs to repair and/or replace 1) tiles; 2) the kitchen; and 3) plumbing, etc." (Pl. Mot. Compel, Ex. 1.) Defendant, through Mr. Bailey, responded by letter on January 19, 2012. Bailey sought clarification of the phrase "all known loss/damage" as well as a corresponding estimate for each such item to determine whether the parties have "fail[ed] to agree on the amount of loss," which is the basis for an appraisal under the Policy. (*Id*., Ex. 2.) Bailey further indicated that Liberty believes such an appraisal is premature because of the coverage issues awaiting resolution in this pending lawsuit. *Id*.

The next day, January 20, 2012, Plaintiffs filed the pending Motion to Compel an Appraisal

---

[1] Mr. Hayes has attached an affidavit to his Reply Brief in which he explains that the nature of his business dealings at the home were fully disclosed to Defendant in connection with filling out the Insurance Policy. (Dkt. 26, Ex. A.)

on the following issues: (1) the cost and scope of the asbestos cleanup[2]; (2) the costs to repair and replace the floor and wall tiles in the second floor bathrooms; and 3) the costs to repair and replace the plumbing and any damage necessitated by the demolition of walls or tiles to gain access to the pipes. (Pl. Mot. Compel, ¶ 5.) It is Plaintiffs' position that Defendant has accepted coverage of the loss/damage that occurred at their residence but continues to underestimate the amount of that loss. (Pl. Mot., ¶ 3; Pg ID 270.) Defendant responds that the request for an appraisal is premature. They acknowledge paying over $89,000 to Plaintiffs for the non-ALE portion of their claim as advance payments, but contend that while there could be issues or disputes with respect to the sufficiency of those payments in the future – and thus, the need for an appraisal at that time – there are threshold coverage disputes set forth in its Counterclaim that should first be addressed and decided by the Court. (Dkt. 23, Def. Resp, Pg ID 414.)

## II. ANALYSIS

The appraisal process at issue in this matter is prescribed by Michigan statute, the provisions of which must be incorporated into a fire insurance policy.[3] The statute provides:

> Sec. 2833. (1) Each fire insurance policy issued or delivered in this

---

[2] It appears from Plaintiffs' Reply Brief and the parties' Joint List of Unresolved Issues that the remaining dispute involves the cost for potential future asbestos contamination resulting from additional removal of the pipes and demolition of the walls. (Dkt. 26, Reply Br., Pg ID 591.) Defendant contends that it is undisputed that their contractor's $11,000 bid covers the existing remediation work and that future bids/estimates will deal with any asbestos-containing pipe insulation that may later be found in other areas of the house. (Def. Resp., Pg ID 424, n.8.) As part of its response to this Motion, Defendant asks the Court to enter an Order directing BDS to perform and complete presently needed asbestos abatement activities. (*Id.*, Pg ID 424.) This Court does not believe that Defendant's opposition to the Motion to Compel an Appraisal properly puts this issue before the Court.

[3] It was explained during the hearing that the Policy at issue is very broad and covers many events, including fire.

> state shall contain the following provisions:
>
> * * *
>
> (m) if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand.

MCL §500.2833(1)(m). Consistent with this statutory provision, the Policy at issue here provides:

> 6. Appraisal. If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. . . . The appraisers will separately set the amount of loss. **If** the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

(Dkt. 1, Ex. C, Policy at 10, ¶ 6.).

Citing *Frans v. Harleysville Lake States Ins. Co.*, 270 Mich. App. 201, 206, 714 N.W.2d 671, 674 (Mich. Ct. App. 2006), Plaintiff contends that Defendant is not "permitted to reject and forgo the appraisal process." (Mot. Compel, Pg ID 270-71.) The Court, however, does not construe Defendant's response as a "rejection" of the appraisal process. Instead, Defendant says it is premature. In support of this claim, Defendant points out that it has filed a Counterclaim challenging the validity of the Policy and thereby has challenged its obligation to pay any losses. (Dkt. 6, Count I.) It has also sought a declaration regarding the availability and scope of coverage

7

as to certain aspects of Plaintiffs' Claim. (*Id*., Count IV.)[4] Defendant's position, therefore, is that the disputed coverage issues should be decided before performing an appraisal to determine an amount of loss that it may never have to pay. (Resp. Br., Pg ID 415-16.) The Court agrees with Defendant's argument and finds support in *Jimenez v. Allstate Indem. Co.*, No. 07-14494, 2008 U.S. Dist. LEXIS 107694 (E.D. Mich. July 18, 2008) *aff'd* 2009 U.S. Dist. LEXIS 13653 (E.D. Mich., Feb. 23, 2009).

In *Jimenez*, the defendant moved to compel an appraisal under an insurance policy provision similar to that involved here. In finding that an appraisal would be premature, the Magistrate Judge explained:

> "[W]here the parties disagree on coverage, the court should determine that issue 'before an appraisal of the damage to the property.'" *Detroit City Dairy, Inc. v. United Nat. Ins. Co.,* 2007 U.S. Dist. LEXIS 82903, 2007 WL 3333020, *2 (E.D.Mich.2007) (Majzoub, M.J.) (*citing Auto-Owners Ins. Co. v. Kwaiser,* 190 Mich.App. 482, 476 N.W.2d 467, 470 (Mich. App.1991)). Because in appraisals, "[t]he umpire generally is limited to determining the amount of loss based on competing claims of the parties. . . . '[m]atters of insurance coverage are for a court and not for appraisers. . .'" *Hartford, supra,* 2006 WL 2844124, *6 (E.D. Mich. 2006) (citing *Kwaiser,* 190 Mich. App. at 486, 476 N.W.2d at 469 (citing *Safeco Ins. Co. of Am. v. Sharma,* 160 Cal. App.3d 1060, 1063, 207 Cal. Rptr. 104 (1984)) (internal citations omitted). *See also Zamplas Johnson, P.C. v. Cincinnati Ins. Co.,* 367 F.Supp.2d 1101, 1106 (E.D.Mich.,2005) (Taylor, J.) (denying the defendant's request for appraisal on the basis that "several coverage issues have not been resolved.").

*Id*. at *22-23. The district judge in this case, District Judge Stephen J. Murphy, III, overruled

---

[4] According to Defendant's Counterclaim, these coverage issues concern whether certain water-related damage within the Plaintiffs' residence involved losses caused by wear and tear or deterioration (Dkt. 6, ¶74, b.) and whether certain water-related damage did not involve loss caused by "sudden and accidental water damage" (*Id*., ¶74, c. and d.).

objections to this Order. He found that the parties' disagreement on the interpretation of a contract phrase was "a preliminary matter that must be resolved before an appraisal can occur." 2009 U.S. Dist. LEXIS 13653, *8 (citing *Auto-Owners Ins. Co. v. Kwaiser,* 190 Mich. App. 482, 476 N.W.2d 467, 469-70 (Mich. Ct. App. 1991) (ruling that "a court is to determine coverage in a declaratory action *before* an appraisal of the damage to the property.")).

Plaintiffs resist this result but do so by focusing on their own case. Pointing to their Complaint, they contend that their lawsuit is limited to the issue of whether Defendant is legally required to continue paying their ALE while their home is uninhabitable. They further contend that, prior to filing this lawsuit, Defendant never contested the fact of coverage and thus, an appraisal is warranted to resolve the disputed issues pertaining to the amount of loss. While Plaintiffs acknowledge that Defendant has filed a Counterclaim disputing coverage and is seeking to have the Policy rescinded, they simply dismiss this as litigation strategy and contend the Counterclaim has no merit. Ultimately, Plaintiffs may be correct, but that is for the District Judge to decide. And, in fact, Plaintiffs have pending a Motion to Dismiss the Counterclaim. (Dkt. 11.) This Court finds that, as in *Jimenez*, *supra*, the coverage issues and disputes should be resolved prior to compelling an appraisal.

### III.   CONCLUSION

Accordingly, Plaintiff's Motion to Compel an Appraisal is **DENIED WITHOUT PREJUDICE**. As discussed at the hearing, the Motion can be resubmitted should Defendant's Counterclaim be dismissed on the merits and Defendant remains unwilling to participate in the

appraisal process.[5]

**IT IS SO ORDERED.**

---

[5] Thus, the Court declines Plaintiffs' request, raised at the hearing, to hold off ruling on this Motion until after Judge Murphy rules on the Motion to Dismiss the Counterclaim.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Date:  February 17, 2012               s/Laurie J. Michelson
                                                  Laurie J. Michelson
                                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 17, 2012.

                                                  s/Jane Johnson
                                                  Deputy Clerk