UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REGINALD HAYES and                                    Case No. 11-15520
CASSANDRA HAYES,                                      Hon. Stephen J. Murphy, III
                                                      Mag. Judge Laurie J. Michelson
                    Plaintiffs,

v.

LIBERTY MUTUAL GROUP INC.

                    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION
## FOR PROTECTIVE ORDER [32]

This is a proposed class action lawsuit over the scope of living-expense provisions in insurance policies issued by Liberty Mutual Group, Inc. ("Liberty Mutual"). Plaintiffs Reginald and Cassandra Hayes allege that, under their homeowner's insurance policy (and presumably those Liberty Mutual issued to others), Liberty Mutual is obligated to pay for Additional Living Expenses ("ALEs") so long as their home remains uninhabitable because of covered damages. Defendant Liberty Mutual contends that the ALE provisions restrict the payment of ALEs to 12 months from the date of loss (which, in Plaintiffs' case, has passed).

Now before the Court is Liberty Mutual's Motion for Protective Order Pursuant to Rule 26(c)(1)(A) ("Motion for Protective Order"). (Dkt. 32, Def.'s Mot. for Protective Order; Dkt. 34, Order of Reference.) Defendant wants to stay production of homeowner polices that it issued to putative class members until there is a ruling on its pending summary judgment motion seeking a declaration that the insurance policy does not cover ALEs after 12 months from the date of loss. (Dkt. 31, Def.'s Mot. Summ. J. at 2; Motion for Protective Order at 2-3.) Plaintiffs maintain that

this two-stage schedule was contemplated by the Court and rejected when District Judge Stephen J. Murphy, III entered the scheduling order in this case. Plaintiffs also assert that Defendant's summary judgment motion violates the automatic bankruptcy stay in this case, and therefore, is not a valid basis for a protective order. (Dkt. 37, Pls.' Resp. to Mot. for Protective Order at 3.)

The Court has considered the arguments raised by the parties in view of District Judge Murphy's scheduling order and, for the following reasons, GRANTS IN PART Defendant's Motion for Protective Order.

## I.     BACKGROUND[1]

The Hayes own an historic home in Flint, Michigan. Their home is covered by a homeowner's insurance policy issued by Liberty Mutual. (Dkt. 1, Ex. A, Compl. ¶ 5.) On or around November 23, 2010, leaking pipes caused water damage to Plaintiffs' home. (Compl. ¶ 4.) About a month later, Plaintiffs contacted Liberty Mutual and informed Defendant of the damage. (Compl. ¶ 10.) Liberty Mutual's insurance adjustor advised the Plaintiffs to have a contractor review the damage. (Compl. ¶ 11.)

During the contractor's repairs, asbestos was discovered in Plaintiffs' home. (*See* Compl. ¶ 14.) So, in late January or early February 2011, Plaintiffs, and their young children, moved into a hotel. (*See* Compl. ¶ 15.) Then, in July 2011, the family leased a home in Bloomfield Hills, Michigan. (Compl. ¶ 27.) Pursuant to the terms of the insurance policy, Liberty Mutual began paying for these temporary living arrangements, or, in policy terms, Additional Living Expenses. (Dkt. 39, Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 1, "Deluxe Homeowners Policy" (FMHO 943)

---

[1]The following facts are not intended to represent findings by the Court for purposes of summary judgment (or otherwise). They are presented to provide a backdrop for the now-pending Motion for Protective Order.

at ECF Pg ID 919.)

Regarding Additional Living Expenses, the policy provides:

COVERAGE D – Loss of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1.   If a loss covered under this Section makes that part of the 'residence premises' where you reside not fit to live in, we cover, at your choice, either of the following . . . .

a.   Additional Living Expenses, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b.   Fair Rental Value, meaning the fair rental value of that part of the 'residence premises' where you reside less expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

\* \* \*

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

("Deluxe Homeowners Policy" (FMHO 943) at ECF Pg ID 919.)  The policy also contains the

following "Homeprotector Plus Endorsement" (FMHO-1199):

INCREASED LIMIT – COVERAGE D

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2, and 3 of Coverage D – Loss of Use.

(Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 1 at ECF Pg ID 913, 949.)

3

Relying on the "12 consecutive months" language quoted immediately above, on October 19, 2011, Liberty Mutual sent Plaintiffs a letter advising that it would not pay for ALEs after November 23, 2011 – one year from the date of loss for the Hayes' insurance claim. (*See* Dkt 31, Def.'s Mot. Summ. J. at 4; Compl., Ex. 4 at ECF Pg ID 49-50.) Liberty Mutual says that through November 2011, it paid $69,655.20 in ALE coverage. (Def.'s Mot. Summ. J. at 4.)

About a month after receiving the ALE-termination letter, on November 18, 2011, Plaintiffs filed this putative class action lawsuit in Genesee County Circuit Court. Count I of the Verified Complaint alleges that "Liberty Mutual's refusal to continue to pay Mr. Hayes' additional living expenses after November 23, 2011 constitutes an anticipatory breach of the insurance policy." (Compl. ¶ 31; *see also id.* at ¶¶ 42-54 (Count I).) Count II of the Complaint seeks declaratory relief: Plaintiffs ask the court to declare that the policy language quoted above requires Liberty Mutual to pay for ALEs as long as Plaintiffs' home remains uninhabitable – even if that period of time is more than 12 months. (Compl. ¶¶ 55-63 (Count II).)

On November 18, 2011, Plaintiffs obtained a state-court temporary restraining order requiring Liberty Mutual to continue ALE payments. (Dkt. 1, Notice of Removal, Ex. A.) Defendant avers that, as of December 15, 2011, it was paying Plaintiffs $8,378.76 per month ($7,500 in lease payments, $578.76 for furniture rental, and $300.00 to Liberty Mutual's third-party ALE service provider). (Dkt. 1, Notice of Removal, Ex. D, Douglas Bailey Aff., ¶ 26.) Recently, Defendants have filed a motion to dissolve the preliminary injunction. (Dkt. 36.)

After the lawsuit was filed, Defendant timely removed the case to this Court and then answered and counterclaimed. (Dkt. 6, Ans. & Counterclaim.) Count I of the Defendant's Counterclaim seeks a declaration permitting rescission of the insurance policy on the basis that Mr.

4

Hayes made material misrepresentations about whether business was being conducted at Plaintiffs' home. (Counterclaim ¶¶ 51-59 (Count I).) Count II of the Counterclaim is an unjust enrichment claim to recover payments Liberty Mutual has made under the policy in the event that Liberty Mutual successfully rescinds the policy. (Counterclaim ¶¶ 59-64.) Count III is an unjust enrichment claim based on Defendant's continued ALE payments under the preliminary injunction in this case. (Counterclaim ¶ 70; *see also id.* ¶¶ 65-71.) Finally, Count IV seeks a "declaration regarding Liberty's coverage obligations and duties under the [policy] with respect to the entirety" of the Hayes' claim. (Counterclaim at 29.)

On February 21, 2012, Plaintiffs served Liberty Mutual with its first set of document requests. (Mot. for Protective Order, Ex. A, Pls.' 1st Set of Doc. Reqs.) Document Request No. 1 is related to the potential class action and provides:

> Produce copies of all homeowner policies issued and/or renewed in Michigan for which the defendant, or a person/entity acting on the defendant's behalf, paid Additional Living Expenses (ALE) within the following period, November 18, 2005 through February 21, 2011.

(*Id.*) It is this request that underlies Liberty Mutual's Motion for Protective Order.

On March 19, 2012, Plaintiffs filed a Notice of Bankruptcy Stay Regarding Defendant Liberty Insurance Corporation's Counterclaim Only ("Notice of Stay"). (Dkt. 30, Not. of Stay.) The Notice of Stay provides that in 2008, the Hayes filed for bankruptcy under Chapter 13 of the bankruptcy code. (Not. of Stay at ECF Pg ID 613.) Although the statement is ambiguous as to the precise timing, the Notice of Stay further states, "Plaintiffs dismissed their 2008 bankruptcy filing and refiled on January 17, 2012." (*Id.*) The Notice of Stay asserts that the refiling stayed Defendant's counterclaims against Plaintiffs but not Plaintiffs' claims against Defendant. (*Id.*)

On March 21, 2012, Liberty Mutual moved for summary judgment on Counts I and II of

5

Plaintiffs' Complaint.  (Dkt. 31.)  The summary judgment motion seeks an order from the Court

> 1. Declaring that ALE Coverage covers loss actually sustained up to a maximum of 12 consecutive months following the date of loss;
>
> 2. Declaring that Plaintiffs are not entitled to ALE Coverage afforded by Coverage D – Loss of Use after November 23, 2011;
>
> 3. Requiring Plaintiffs to reimburse Liberty for ALE Coverage that Liberty has paid after November 23, 2011;
>
> 4. Dismissing Plaintiffs' Verified Complaint in its entirety with prejudice;
>
> 5. Awarding any and all other relief that this Court may deem just and proper.

(Dkt. 31, Def.'s Mot. Summ. J. at 2.)

On March 23, 2012, which was Liberty Mutual's deadline for answering Plaintiffs' Document Request No. 1, Defendant filed the now pending Motion for Protective Order.  (Dkt. 32.)

On April 13, 2012, Bankruptcy Judge Daniel S. Opperman lifted the automatic stay "in order to permit Liberty to liquidate its Counterclaim to Judgment" but added "so long as this bankruptcy proceeding is still pending, Liberty is not permitted or authorized to take any action to enforce or collect upon any judgment entered in the District Court Action that includes a monetary award in Liberty's favor."  *In re Hayes*, No. 12-30185 (Bankr. E.D. Mich. Apr. 23, 2012) (Order Lifting Automatic Stay).

## II.   ANALYSIS

### A.   The Bankruptcy Stay Does Not Preclude Defendant's Motion For Summary Judgment

As an initial matter, Plaintiffs assert that Defendant's reliance on its pending summary judgment motion for the protective order is misplaced because that motion was filed in violation of

6

the automatic bankruptcy stay and is therefore void.  The Court disagrees that the entirety of Defendant's summary judgment motion is void such that it is an improper basis for a protective order.

Plaintiffs have not specified which subsection of the automatic stay provision they rely on; however, it appears that they are asserting that Defendant violated the following statutory language:

> [A bankruptcy] petition . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  As the plain language of 11 U.S.C. § 362(a)(1) indicates, "the filing of a bankruptcy petition only initiates a stay with respect to actions or proceedings *against* a debtor, not actions or proceedings pursued by a debtor against another party."  *Madison Capital Co., LLC v. Smith*, No. Civ. 07-27-ART, 2009 WL 1119411, at *1 (E.D. Ky. Apr. 27, 2009); *see also Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[W]ithin one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debtor may continue."); *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) ("[T]he automatic stay is inapplicable to suits by the bankrupt . . . . This appears from the statutory language . . . and from the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors.").

Because Plaintiffs may pursue their claims against Liberty Mutual despite the automatic stay stemming from their bankruptcy filing, it logically follows that Liberty Mutual should be able to defend against Plaintiffs' claims – including defense by way of dispositive motion.  The case law

supports this corollary. *See Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) ("If a debtor's offensive claims are not subject to the automatic stay, *a fortiori* a creditor's motion to reinstate and seek summary judgment of such non-stayed claims is not subject to the automatic stay."); *Martin-Trigona*, 892 F.2d at 577 (finding that defendant did not violate the automatic stay provision by moving to dismiss plaintiff-debtor's state-court action); *4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241, 250 (S.D.N.Y. 2011) (finding that stay did not extend to claims brought by debtor; granting summary judgment in part to both parties on debtor's claims including *sua sponte* granting summary judgment in favor of non-debtor on one of debtor's contract claims).

Plaintiffs do not dispute this authority but instead argue that Defendant is not truly defending against their claims by filing a motion for summary judgment. (Pls.' Resp. to Def.'s Mot. for Protective Order at 2.)   In particular, Plaintiffs point out that Count III of Liberty Mutual's Counterclaim, an unjust enrichment claim, seeks

> [a] [judgment] against Plaintiffs/Counterclaim Defendants ordering recoupment or reimbursement to Liberty for the total of all ALE payments and advancements from November 23, 2011 up until the point when Liberty is able to successfully obtain a reversal, modification or overruling of the December 1 Order for Preliminary Injunction.

(Dkt. 6, Counterclaim at 29; *see also id.* ¶¶ 65-71.)  And in Defendant's summary judgment motion, Liberty Mutual similarly asks the Court to order "Plaintiffs to reimburse Liberty for ALE Coverage that Liberty has paid after November 23, 2011." (Def.'s Mot. Summ. J. at 2.)

The Court agrees that Defendant's summary judgment motion seeks affirmative relief in favor of Liberty Mutual.  Count I of Plaintiffs' Complaint asserts breach of contract, i.e., that Liberty Mutual anticipatorily breached the insurance policy when it sent a letter to Plaintiffs informing them that ALEs would not be paid after November 23, 2011.  (Compl. ¶ 51.)  Count II of Plaintiff's

Complaint seeks a declaration that "the policy language quoted above requires Liberty Mutual to continue to pay for additional living expenses as long as the Hayes' home is uninhabitable." (Compl. ¶ 63.)   Thus, in seeking summary judgment while the bankruptcy stay is in effect, Defendant could have simply requested an order (1) concluding that it did not anticipatorily breach the insurance policy, and (2) declaring that the insurance policy does not require Liberty Mutual to pay ALEs for more than one year from the date of loss.   Instead, Liberty Mutual's summary judgment motion goes one step further: it asks the Court to order "Plaintiffs to reimburse Liberty for ALE Coverage that Liberty has paid after November 23, 2011."  (Def.'s Mot. Summ. J. at 2.) While it is true that if summary judgment is granted in Liberty Mutual's favor, Plaintiffs may be obligated to reimburse Liberty Mutual, the Court agrees with Plaintiffs that a court order to this effect would be equivalent to granting summary judgment in Liberty Mutual's favor on its unjust enrichment counterclaim (Count III).

In responding to this argument, Liberty Mutual explains: "At this juncture, Liberty's Motion for Summary Judgment merely seeks a judgment against Debtors for reimbursement of ALE paid after November 23, 2011 and discontinuation of the obligation to make ALE payments, and not the *enforcement of or collection upon* any such judgment."  (Dkt. 40, Def.'s Reply to Pls.' Resp. to Def.'s Mot. for Protective Order ("Def.'s Reply") at 2 n.1.)  This same argument, however – that a creditor's lawsuit against a bankruptcy debtor may proceed to judgment despite an automatic stay so long as the creditor promises not to enforce the judgment – could be made by a creditor in every case where the creditor's claim against a debtor has been subjected to an automatic stay.  But the plain language of 11 U.S.C. § 362(a) proscribes the "continuation . . . of a judicial . . . proceeding against the debtor."  The Court seriously questions Defendant's claim that ordering Plaintiffs to

repay Defendant's ALE payments after November 23, 2011 is not judicial action against a debtor within the meaning of 11 U.S.C. § 362(a) so long as Liberty Mutual does not seek enforcement of that judgment. *See Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 373 (10th Cir. 1990) (finding that a *grant* of summary judgment on non-debtor's claims in favor of debtor violated automatic stay and was void); *Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238, 239 (5th Cir. 1985) (holding, where district court *dismissed* non-debtor's suit against bankruptcy debtor, "if either of the parties takes any step to obtain dismissal, such as motion to dismiss or motion for summary judgment, there is clearly a continuation of the judicial proceeding" and noting "absent the bankruptcy court's lift of the stay, or perhaps a stipulation of dismissal, a case such as the one before us must, as a general rule, simply languish on the court's docket until final disposition of the bankruptcy proceeding").

But even if the Court were to accept Plaintiffs' position, this does not mean that the entirety of Defendant's summary judgment motion was void when filed. That motion properly seeks (1) a declaration that "ALE Coverage covers loss actually sustained up to a maximum of 12 consecutive months following the date of loss;" (2) a declaration "that Plaintiffs are not entitled to ALE Coverage afforded by Coverage D – Loss of Use after November 23, 2011;" and (3) dismissal of "Plaintiffs' Verified Complaint in its entirety with prejudice[.]" (Def.'s Mot. Summ. J. at 2.) And even if this Court were to find the entirety of Defendant's summary judgment motion void because it seeks reimbursement, nothing would preclude Defendant from refiling a virtually identical motion. In fact, given that Bankruptcy Judge Opperman has now lifted the automatic bankruptcy stay (except that Liberty may not "enforce or collect upon any judgment" entered in this case "that includes a monetary award in Liberty's favor") Defendant apparently would be able to resubmit its motion verbatim. Accordingly, the Court concludes that Defendant's summary judgment motion is not an

improper basis for a protective order.[2]

**B.     The Pending Summary Judgment Motion Does Not Warrant A Stay Of All Discovery**

   *1.     Legal Standard*

Federal Rule of Civil Procedure 26(c)(1)(A) provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery."  To establish "good cause" the party seeking a protective order "'must articulate specific facts showing "clearly defined and serious injury" resulting from the discovery sought and cannot rely on mere conclusory statements.'"  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).  "District courts must use their sound discretion in deciding whether (and in what fashion) to issue protective orders."  *Perry v. City of Pontiac*, 254 F.R.D. 309, 312 (E.D. Mich. 2008) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 306 (6th Cir. 2007)).

Liberty Mutual asserts that the requisite "good cause" in this case is judicial economy and orderly case management.  (Def.'s Mot. for Protective Order at 1; Def.'s Reply at 3-4.)  More specifically, according to Defendant,

> If ALE as provided in Coverage D – Loss of Use in the Liberty
> Policy is found to provide ALE Coverage for no more than 12

---

[2]Plaintiffs also ask the Court to deny the motion as untimely.  (Pls.' Resp. at 4.)  Federal Rule of Civil Procedure 26(c) does not contain any explicit time limit for filing a motion for a protective order.  There are, however, implicit limitations providing a motion must be timely.  *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 413 (M.D.N.C. 1991).  "Motions for a protective order must be made before or on the date the discovery is due."  *Ayers v. Cont'l Cas. Co.,* 240 F.R.D. 216, 221 (N.D. W. Va. 2007) (citing *United States v. IBM Corp.,* 70 F.R.D. 700, 701 (S.D.N.Y. 1976)).  The Court finds that Defendant's Motion, filed the day its discovery responses were due, is timely.

11

> months following the date of loss, then no other Michigan
> policyholder with the same policy provisions will be able to state a
> claim against Liberty.  It is nonsensical to begin discovery regarding
> ALE Coverage beyond 12 months following the date of loss if the
> Court rules, as a matter of law, that no such claim exists under such
> policy provision.

(Def.'s Reply at 3-4.)

In a related but distinct argument, Defendant maintains that Plaintiffs' class-action discovery

request does not seek relevant information until the threshold ALE duration issue is resolved:

> [O]nly if the Court decides this question of law adverse to Liberty by
> finding that ALE Coverage extends beyond 12 consecutive months
> following the date of loss, could the subject discovery request
> seeking production of *other* Michigan policyholders insurance
> policies become relevant, but only because it might be relevant to
> Plaintiffs' ability to establish numerosity in seeking a class
> certification order. Again, however, because issues regarding the
> meaning and interpretation of an insurance policy are questions of
> law for the Court to decide, the discovery is not relevant, proper or
> permissible given the pendency of Liberty's Motion for Summary
> Judgment.

(Def.'s Mot. for Protective Order at 3.)

 "Trial courts have broad discretion and inherent power to stay discovery until preliminary

questions that may dispose of the case are determined."  *Gettings v. Bldg. Laborers Local 310*

*Fringe Benefit Fund,* 349 F.3d 300, 304 (6th Cir. 2003) (quoting *Hahn v. Star Bank,* 190 F.3d 708,

719 (6th Cir. 1999)).  The mere filing of a dispositive motion, however, does not warrant the

issuance of a stay under Rule 26(c).  *See United States v. County of Nassau,* 188 F.R.D. 187, 188

(E.D.N.Y. 1999).

### 2.      *Limited Class Discovery is Warranted*

Again, Liberty seeks "a deferral with respect to . . . having to respond to Document Request No. 1" because it believes that "[t]he issue of whether the Hayes as the named plaintiffs state a valid claim against Liberty for ALE Coverage beyond the maximum 12 month time-limit as expressed in the Liberty Policy should be determined ***before*** any class discovery . . . ." (Mot. for Protective Order at 2 (emphasis in original).)  In support, Liberty relies on *Jimenez v. Allstate Indemnity Co.*, 765 F. Supp. 2d 986, 997 (2011), a case in which District Judge Murphy, to serve judicial economy, "adjourned the due date for [plaintiff's] motion for class certification in order to first decide whether [plaintiff] himself had a valid claim."  (*Id.*)

There is no dispute that if Defendant's dispositive motion is granted, the issue of class certification becomes moot.  But it is equally true that if the motion is denied, class discovery will be appropriate.  Thus, efficiency arguments can be made on both sides.  Indeed, the parties' presented these competing viewpoints in their Rule 26(f) Discovery Plan.  (Dkt. 15.)  Plaintiff requested that class and merit discovery be conducted simultaneously, while Defendant explained that discovery needed to be conducted in phases.  (*Id.* at 7.)  Defendant advised that it anticipated filing a dispositive motion regarding the scope of ALE coverage and argued, just as it does in this motion, that "class certification and related class certification discovery should be stayed until it is determined whether Plaintiffs have a valid claim for coverage and benefits under the Liberty Policy."  (*Id.* at 7-8.)

In issuing the Scheduling Order, however, Judge Murphy did not accept Defendant's request to stay and/or phase class and merits discovery.  In fact, under the Scheduling Order, non-class dispositive motions are due September 15, 2012 and class certification motions are due only one

month later, on October 23, 2012.  (Dkt. 17.)  Thus, Judge Murphy contemplated the filing of class certification briefs before resolution of non-class dispositive motions.  This would necessitate some simultaneous class and merits discovery.  Thus, the Court shares Plaintiffs' concern that Defendant is attempting to circumvent the Scheduling Order entered by Judge Murphy.  (Pls.' Resp. at 6.)

As a result, the Court is going to permit some limited discovery.  With respect to Plaintiff's Document Request No. 1, Defendant is to produce copies of all homeowner policies issued and/or renewed in Michigan for which Defendant, or a person/entity acting on Defendant's behalf, stopped paying Additional Living Expenses (ALE) after 12 months from the date of loss within the following period, November 18, 2005 through February 21, 2011.  As Defendant indicates, the relevant information being sought by Plaintiffs is the identification of policyholders to whom ALE benefits were terminated at 12 months.  (Def. Reply at 3.)  Defendant has not established that it will be overly burdensome or costly to produce this information.  If Defendant's Motion for Summary Judgment is denied, this information will be needed and, if the Motion is granted, Defendant has not shown that it will have suffered any great prejudice.

III.    CONCLUSION

For the reasons set forth above and on the record during the oral argument, Defendant's Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**.  In response to Plaintiffs' Document Request No. 1, Defendant is to produce all policies for Michigan policyholders, from November 18, 2005 through February 21, 2011, in which ALE benefits were terminated at 12 months.  The production is to occur on or before **June 2, 2012** unless Judge Murphy grants Defendant's Motion for Summary Judgment prior to that date**.**

**IT IS SO ORDERED.**

14

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  May 2, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 2, 2012.


s/Jane Johnson
Deputy Clerk